[No. 51996–0.   En Banc.   August 14, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN P. NORDBY, *Appellant.*

*Katherine Steele Knox,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *Jerry R. Adair* and *J. Scott Timmons, Deputies,* for respondent.

DURHAM, J.—John Nordby challenges his 16–month sentence for vehicular assault. Under the Sentencing Reform Act of 1981 (the Act), the presumptive sentence range for Nordby's crime was 6 to 12 months. Nordby contends that the trial court did not supply adequate reasons to justify any sentence outside the presumptive range. The Commissioner for the Court of Appeals upheld the trial court's sentence. Nordby moved to modify the commissioner's decision, whereupon the Court of Appeals certified the case to this court. We affirm Nordby's sentence.

On the evening of July 15, 1984, Nordby, Roger Horne and their girl friends were riding in Horne's car. Horne was driving, with his girl friend seated next to him. Nordby was sitting on the right passenger side with his girl friend on his lap. Nordby was intoxicated at the time. As the car proceeded westbound on Court Street in Pasco, Washington, it approached two pedestrians who were pushing their bicycles along the shoulder of the road. Horne's girl friend saw them and said, "There's two points!", in reference to "Death Race 2000", a movie in which road race drivers score points for running over pedestrians. Nordby then reached across the front seat, grabbed the steering wheel and jerked it suddenly to the right. Horne grabbed the wheel back but too late to avoid hitting one of the pedestrians, 15–year–old Tia Gibson. She suffered two severely broken legs and a broken arm, necessitating surgery; she later lapsed into a coma for several days. During the incident, she had been in extreme pain and this pain will continue for some time. There is also the possibility of permanent injury.

Nordby pleaded guilty to the crime of vehicular assault. RCW 46.61.522. The presumptive sentence range for this crime under the Act is determined by combining the seriousness level of vehicular assault with Nordby's criminal history. RCW 9.94A.310. Nordby had a criminal history score of "1" because of a prior second degree burglary conviction. Former RCW 9.94A.360(5). Thus, his presumptive sentence range was 6 to 12 months.

The trial court may impose a sentence outside the presumptive range if it finds, "considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). In such a case, the court "shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.120(3). The Act provides a list of aggravating and mitigating circumstances "which the court may consider in the exercise of its discretion to impose an exceptional sentence", but these factors are only illustrative and not exclusive. RCW 9.94A.390. The drafters of the statute recognized that "not all exceptional fact patterns can be anticipated", Washington Sentencing Guidelines Comm'n, *Implementation Manual* § 9.94A.390, Comment (1984), and that the trial court must tailor the sentence to the facts of each case.

The trial court here relied on three unlisted "substantial and compelling reasons" in sentencing Nordby to 16 months, a sentence greater than the presumptive range: (1) the particular vulnerability of the victim;[1] (2) Nordby's intentional mental state when he committed the crime; and (3) the seriousness of the victim's injuries.[2] The commis-

---

[1]Former RCW 9.94A.390(2), Aggravating Circumstances, permits the court to consider whether "[t]he defendant knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance *due to extreme youth, advanced age, disability, or ill health.*" (Italics ours.) We note that the trial court did not base its sentence on this listed factor, since the vulnerability of the victim was not a result of her extreme youth, advanced age, disability, or ill health, but rather was due to her relatively defenseless status as a pedestrian.

[2]Although Nordby had also violated the terms of his probation for his prior

sioner affirmed the trial court's sentence based on factors (1) and (2), but held that factor (3) was insufficient to justify the exceptional sentence. We agree with the commissioner.[3]

Our review of the trial court's sentence is governed by RCW 9.94A.210(4), which provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) *Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense*; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

(Italics ours.) Nordby claims that the trial court's reasons do not justify any sentence outside the 6 to 12 months presumptive range; he does not claim that his 16–month sentence is "clearly excessive" when compared to the 6– to 12–month presumptive range. Thus, we need consider only subsection (a) of RCW 9.94A.210(4).

RCW 9.94A.210(4)(a) actually consists of two parts. First, the appellate court must decide if the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. As this is a factual determination,

---

second degree burglary conviction, the trial court did not base its exceptional sentence on this factor. However, the commissioner mentioned the probation violation in his opinion, leading the Court of Appeals to certify to this court the question of whether the commissioner was justified in considering this as a substantial and compelling reason justifying an exceptional sentence. We decline to decide this question because Nordby's exceptional sentence is justified on other grounds.

[3]The Court of Appeals also certified to this court the question of whether the sentencing court could use prior nonvehicular convictions in computing the criminal history of a person who has committed vehicular assault, where the court could not use such convictions in computing the criminal history of a person who commits vehicular homicide. *Compare* former RCW 9.94A.360(4) *with* former RCW 9.94A.360(5). If Nordby's second degree burglary conviction could not be considered in computing his criminal history, his criminal history score would be "0" rather than "1", and his presumptive sentence range would be 3 to 9 months rather than 6 to 12 months. However, since a resolution of this issue would not affect the validity of Nordby's 16–month exceptional sentence, and since neither party has briefed this issue, we decline to decide it at this time.

the appellate court is to uphold the sentencing judge's reasons if they are not clearly erroneous. Here, the trial court found that Nordby's victim, a pedestrian, was completely vulnerable and defenseless, that Nordby intentionally grabbed the steering wheel of Horne's car and turned the car into the direction of the victim, and that she suffered serious injuries. We hold that these findings are supported by the record.

▓▓ The second part of RCW 9.94A.210(4)(a) requires the appellate court to independently determine, as a matter of law, if the sentencing judge's reasons justify the imposition of a sentence outside the presumptive range. The reasons must be "substantial and compelling", RCW 9.94A.120(2), and must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense.[4]

We find that the first two reasons given by the trial court justify an exceptional sentence. The trial court (and the commissioner, in his ruling upholding the trial court's decision) considered that the victim here was a pedestrian pushing her bicycle alongside the road. Unlike a potential victim in a second automobile, she had no opportunity to evade Horne's car once Nordby swerved it toward her. Nor was she afforded the additional protection against injury that a second automobile might provide for a driver or passenger of that automobile. The trial court noted that the victim here was, in fact, completely defenseless and vulnerable. This reason justifies an exceptional sentence.

▓ The trial court also points to Nordby's especially

---

[4]For example, the sentencing judge may not list the offender's criminal history as a reason to justify an exceptional sentence since criminal history is one of the two components (the other being the seriousness of the offense) used to compute the presumptive range under RCW 9.94A.320. *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821 (1985). Nor may the sentencing judge list "sophistication and planning" as a reason justifying an exceptional sentence for the crime of first degree prison escape where the planning does not go beyond that found in any escape attempt since this factor has already been considered in determining the seriousness level, and hence the presumptive range, for that crime. *State v. Baker,* 40 Wn. App. 845, 700 P.2d 1198 (1985).

culpable mental state at the time of the crime. Under RCW 46.61.522(1)(a) and (b), a person may be guilty of vehicular assault if he operates or drives any vehicle in a reckless manner, or while under the influence of intoxicating liquor or any drug (and this is the proximate cause of serious bodily injury to another). Hence, the requisite mental states are either recklessness or intoxication. Here, not only was Nordby intoxicated, but the record shows that he "intentionally grabbed the steering wheel of the automobile and turned it into the direction of the victim." The trial court was justified in considering Nordby's intentional act as a reason for imposing an exceptional sentence.

Turning to the last of the trial court's reasons, we find that the seriousness of the victim's injuries does not justify an exceptional sentence. RCW 46.61.522(1) makes infliction of "serious bodily injury" a prerequisite for vehicular assault, and RCW 46.61.522(2) defines that term as follows:

> "Serious bodily injury" means bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

While the victim's injuries here were severe, this factor was already considered in setting the presumptive sentence range for vehicular assault. It cannot, therefore, be a basis for a sentence outside the presumptive range.

In summary, we hold that Nordby's 16–month sentence was justified, both by the particular vulnerability of the victim and by Nordby's intentional mental state at the time of the crime.

The commissioner's ruling upholding the sentence of the trial court is affirmed.

DOLLIVER, C.J., and BRACHTENBACH, DORE, ANDERSEN, and CALLOW, JJ., concur.

UTTER, J. (dissenting)—The Sentencing Reform Act of 1981 provides a structure for the exercise of discretion by public officials. The trial court escaped the confines of this

structure to impose a sentence outside the act's presumptive sentencing range. I do not agree with the majority that two of the reasons articulated by the trial court justify the exceptional sentence imposed. First, the "particular vulnerability" of the victim as a pedestrian, while true, is present in too many vehicular assault cases for this one to be characterized as exceptional. Second, allowing a prosecutor to present proof of intent as an aggravating factor in sentencing for a nonintentional crime violates a specific provision of the act.

The Sentencing Reform Act of 1981 authorizes a trial court to impose a sentence outside of the standard sentence range if the court finds "substantial and compelling reasons" that justify an exceptional sentence. RCW 9.94A-.120(2); *see also* Laws of 1985, ch. 443, § 8, p. 1916. The act also provides a nonexclusive, illustrative list of aggravating factors that a court can consider in the exercise of its discretion to impose an exceptional sentence; one of the factors is that "[t]he defendant knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." RCW 9.94A.390(2). In this case, Tia Gibson was pushing her bicycle along the roadside when Nordby steered the car into her. The majority argues that as a pedestrian Gibson was more vulnerable than a potential victim in a car, and that this vulnerability justifies an exceptional sentence.

A sentence outside the presumptive sentencing range is appropriate only when the circumstances of the crime distinguish it from other crimes of the same statutory category. D. Boerner, *Sentencing in Washington* § 9.6, at 9–13 (1985). The Legislature considers the typical circumstances of a crime when it establishes the severity of a statutory offense, and probably considers the "worst case" when it establishes the maximum prison sentence. Zimring, *Sentencing Reform in the States: Some Sobering Lessons From the 1970's,* 2 N. Ill. U. L. Rev. 1, 14 (1981). A court therefore should rely only on factors that the Legislature

would consider exceptional to impose a sentence outside the presumptive sentencing range. *State v. Peterson,* 329 N.W.2d 58, 60 (Minn. 1983);[5] *State v. Higson,* 310 N.C. 418, 312 S.E.2d 437, 441 (1984).

The fact that the victim of Nordby's vehicular assault was a pedestrian is not exceptional. A significant number of the motor vehicle accidents that produce injury or death involve pedestrians. *See* Nat'l Safety Coun., *Accident Facts* 61 (1985). Nationwide, collisions involving pedestrians account for the largest number of fatal motor vehicle accidents in urban areas. *Accident Facts,* at 47. When the Legislature enacted the vehicular assault statute in 1983, this state's leading decisions on vehicular homicide involved pedestrians. *See State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960) (pedestrian on sidewalk); *State v. Pyles,* 9 Wn. App. 246, 511 P.2d 1374 (1973) (pedestrian running alongside car). In light of these statistics it would be erroneous to assume that the Legislature did not consider accidents involving pedestrians when it adopted the sentencing guidelines for vehicular assault. The majority errs when it concludes that the fact that Nordby hit a pedestrian is a factor that justifies an exceptional sentence.

The second factor invoked by the trial court and accepted by the majority to justify an exceptional sentence is "Nordby's intentional mental state when he committed the crime". The prosecutor argues that traditionally a more culpable mental state is associated with a greater severity of punishment. The prosecutor asserts that because Nordby's conduct constituted second degree assault with a deadly weapon, which has a presumptive sentence of 18 to 24 months, the trial court appropriately fixed Nordby's

---

[5]The Washington Sentencing Guidelines Commission unanimously recommended that the Legislature adopt Minnesota's standard for exceptional sentences as that standard was construed by the Minnesota Supreme Court. D. Boerner, *Sentencing in Washington* § 9.3, at 9–6 (1985). The Legislature concurred. Minnesota decisions on what factors are sufficiently "substantial and compelling" to justify an exceptional sentence thus provide especially persuasive authority for Washington courts.

sentence at 16 months.

The flaw in the prosecutor's reasoning is that Nordby has not been proven to have acted with specific intent to commit a crime, the type of intent that justifies more severe punishment. RCW 9A.08.010(1).[6] Nordby pleaded guilty to vehicular assault, a nonintentional crime. *See* RCW 46.61-.522.[7] The prosecutor failed to charge Nordby with a more serious intentional crime.[8] A significant criticism of inde-

---

[6]RCW 9A.08.010(1) defines the different levels of culpability:

"(a) *Intent.* A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime.

"(b) *Knowledge.* A person knows or acts knowingly or with knowledge when:

"(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

"(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

"(c) *Recklessness.* A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

"(d) *Criminal negligence.* A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation."

[7]Vehicular assault is defined as follows:

"(1) A person is guilty of vehicular assault if he operates or drives any vehicle:

"(a) In a *reckless* manner, and this conduct is the proximate cause of serious bodily injury to another; or

"(b) While *under the influence* of intoxicating liquor or any drug, as defined by RCW 46.61.502, and this conduct is the proximate cause of serious bodily injury to another." (Italics mine.) RCW 46.61.522(1).

[8]The prosecutor's office argues—without citing any authority—that the charge of assault "was not available" against Nordby because our decisions require that the more specific statute of vehicular assault be used. This argument is not persuasive. This court held in *State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960) that when both the negligent vehicular homicide statute, former RCW 46.56.040, and the manslaughter statute, RCW 9.48.060 (now 9A.32.060–.070), apply to the same case, only the vehicular homicide statute can control. This court did not rule, however, that the vehicular homicide statute preempts the intentional homicide statutes. Similarly, it does not follow that the vehicular assault statute preempts the intentional assault statutes. The predominant purpose of the vehicular

terminate sentencing is that prosecutors have been able to obtain guilty pleas by offering reduced charges, knowing that the real facts of the case would be considered in sentencing. D. Boerner, § 9.15, at 9–49. The result has been illusory bargains as well as convictions that misrepresent a defendant's actual conduct and criminal history. D. Boerner, § 9.15, at 9–49. Professor Boerner notes that the public has grown increasingly dissatisfied "with a system of criminal justice where everything appear[s] negotiable, and where truth and accountability [are] relegated to secondary status." D. Boerner, § 9.16, at 9–49.

In response to this criticism, the Sentencing Reform Act of 1981 directs trial courts not to consider during sentencing facts that have not been proven or admitted:

> In determining any sentence, the trial court may use no more information than is admitted by the plea agreement, and admitted to or acknowledged at the time of sentencing. . . . Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. . . . *Real facts that establish elements of a higher crime, a more serious crime, or additional crimes cannot be used to go outside the presumptive sentence range except upon stipulation.*

(Italics mine.) Former RCW 9.94A.370, in part. This "real facts policy" was adopted to insure that facts not proven as an element of the conviction—or of the plea—would not be used in the sentencing decision or to justify a departure from the presumptive sentence range. Washington Sentencing Guidelines Comm'n, *Implementation Manual* II–35 (1984). Professor Boerner applauds the Legislature's prohibition of the use of unproven facts in sentencing decisions:

---

homicide statute—and, presumably, the vehicular assault statute—is to prohibit reckless and drunken driving. 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 341, at 526 (1980); *see generally State v. Costello*, 59 Wn.2d 325, 332, 367 P.2d 816 (1962) (Foster, J., concurring). Neither our vehicular homicide nor our vehicular assault statute is appropriate for the prosecution of a truly intentional crime. *See generally* 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 342 (1980); *see also State v. McDonald*, 1 Wn. App. 592, 595, 463 P.2d 174 (1969).

Defendants will be held accountable for what they have been convicted of, but not for crimes that the prosecution either could not or chose not to prove. The fact that plea agreements are no longer illusory will go far to insure that they are entered into carefully and that they are "necessary and in the public interest." . . . This policy judgment . . . will go far to bring integrity to the process of determining guilt and imposing punishment, thus fulfilling the purpose of the Sentencing Reform Act to "[p]romote respect for the law by providing punishment which is just."

(Footnotes omitted.) D. Boerner, § 9.16, at 9–50.

In this case the trial court violated RCW 9.94A.370. State of mind is an issue of fact that can be proven by direct or circumstantial evidence. *See, e.g., State v. Caliguri,* 99 Wn.2d 501, 505–06, 664 P.2d 466 (1983). By relying on the prosecutor's assertion that Nordby acted intentionally, the court used more information than admitted by the plea agreement. Moreover, at the sentencing hearing Nordby's counsel objected to the prosecutor's statement that Nordby acted intentionally. Although the sentencing judge's action is understandable, RCW 9.94A.370 plainly prohibits the judge from imposing an exceptional sentence because of a material fact that the defendant disputes unless the fact is proven at an evidentiary hearing. No evidentiary hearing was held in this case.

The purposes of the Sentencing Reform Act of 1981 can be achieved only if the act is honored in its spirit as well as its letter. Orland, *Is Determinate Sentencing an Illusory Reform?,* 62 Judicature 381, 386–88 (1979). Affirmance in this case expands the exercise of discretion beyond the parameters intended by the Legislature. For these reasons, I respectfully dissent.

PEARSON and GOODLOE, JJ., concur with UTTER, J.