[No. 25878-1-II. Division Two. August 31, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. FONOTAGA F. TILI, *Appellant*.

---

290

*Linda J. King*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor* and *Barbara L. Corey-Boulet, Deputies*, for respondent.

HUNT, J. — Fonotaga Tili appeals his exceptional sentence for first degree rape. He argues that because the trial court originally imposed consecutive, standard-range sentences for multiple crimes at his initial sentencing, it was collaterally estopped from imposing an exceptional sentence on remand. Finding no abuse of discretion, we affirm.

## FACTS

### I. ORIGINAL TRIAL, SENTENCE, AND FIRST APPEAL

L.M. returned home around 11:15 P.M., undressed, took her cordless phone with her into the bathroom, and took a bath. Hearing noises that sounded like someone was in her apartment, she got out of the tub and locked the bathroom door. After a few minutes, she decided to investigate; but before leaving the bathroom, she dialed the first two digits of 911 on her cordless phone. At some later point, L.M. must have punched the last "1" on her phone because a 911 operator received the call and captured and recorded on the

open line the sounds of the subsequent assaults.

L.M. entered the kitchen/living room area and saw Tili in his underwear, holding a metal pan. He violently struck her in the head with the pan. L.M. fell to her knees, begging him to stop and to take anything he wanted. Tili ignored her pleas, continued his assault, told her to "shut up," and said, "I'm going to kill you."

Tili beat her, told her to lie on her stomach, and positioned her with her buttocks raised. Whenever L.M. turned her head to relieve the pain, Tili pushed her head into the floor. After subduing her, Tili lifted her robe, exposing her nude body, licked her anus, penetrated her vagina and anus with a sharp object, told her to say, "I like it,"[1] started to put his penis in her anus, stopped, and then inserted his penis in her vagina. Throughout this rape, Tili forced L.M. to keep her head down, threatening to kill her and telling her he had a knife.

The police arrived while the rape was in progress and knocked on the door within two or three minutes of the completed 911 call. Tili told L.M. to shut up and again threatened to kill her. At the second knock and announce by the officers, L.M. screamed.

Tili hit L.M. four more times as he got up to run from the police, who came through the door. The officers pursued him. A police dog found him in his underwear, hiding under a car in the parking lot.

At the hospital, the staff treated L.M.'s multiple cuts and wounds and gathered physical evidence. The anal swab showed blood. They also treated her for multiple contusions to her face and for bite marks. Her purse was later found in another apartment where Tili had been staying.

A jury convicted Tili of three counts of first degree rape, one count of first degree burglary, and one count of second degree assault (for initially striking L.M. in head with a frying pan). At sentencing, the trial court denied the State's request for an exceptional sentence based on deliberate

---

[1] She complied with this demand.

cruelty and victim vulnerability. The court found that the multiple penetrations of the victim did not constitute the same criminal conduct, but rather amounted to three separate and distinct criminal acts, for which the court imposed separate consecutive sentences. The court did note, however, that if an appellate court ruled that the multiple penetrations constituted a single course of criminal conduct, then these *"various acts,"* together with other reasons mentioned by the prosecutor,[2] would establish a basis for an exceptional sentence. The trial court then imposed high-end standard range sentences for Tili's convictions, treating the three rapes as separate crimes and ordering their high-end standard range sentences to run consecutively under RCW 9.94A.400(1)(b). Those sentences totaled 417 months.

The Washington Supreme Court granted direct review and affirmed all the convictions. *State v. Tili,* 139 Wn.2d 107, 985 P.2d 365 (1999). The Court reversed the trial court's finding that the rapes were separate and distinct conduct for sentencing purpose, held that the sentences must be served concurrently, and remanded for resentencing. *Tili,* 139 Wn.2d at 110, 128.

## II. Resentencing on Remand

On remand, the State again requested an exceptional sentence. Tili objected that collateral estoppel barred the court from imposing an exceptional sentence. The trial court disagreed and found that nothing in the previous sentencing record foreclosed imposing an exceptional sentence. As the Supreme Court instructed, the trial court counted the three rapes as the same criminal conduct for sentencing purposes and imposed an exceptional sentence of 417 months for first degree rape, with the burglary and assault convictions to run concurrently. The trial court justified the exceptional sentence on any one of three grounds: (1) the victim's vulnerability, (2) deliberate cruelty,

---

[2] Those "other reasons" included "deliberate cruelty" and "particular vulnerability" of the victim.

and (3) "multiple incidents." On appeal, the State concedes that the victim's vulnerability was not a proper factor to support an exceptional sentence.

There were some discrepancies between the court's Findings and Conclusions and its Judgment and Sentence regarding offender scores and standard ranges. In its Findings and Conclusions, the court recited the correct standard range for all five counts against Tili.[3] But in its Judgment and Sentence, the court recited erroneous standard range calculations for rape counts I, II, and III, and for the burglary count. Nevertheless, its entry of the term of confinement in the Judgment and Sentence reflected the correct standard ranges from its Findings and Conclusions.

## ANALYSIS

### I. SENTENCING—STANDARD OF REVIEW

■■ Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. RCW 9.94A.120(2); *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991). RCW 9.94A.210(4) governs appellate review of an exceptional sentence, stating, in pertinent part:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

*See also State v. Johnson*, 124 Wn.2d 57, 65-66, 873 P.2d 514 (1994). RCW 9.94A.390(2) lists several aggravating factors that the trial court may consider in imposing an exceptional sentence. These listed statutory factors are not

---

[3] The trial court's calculations were "correct" in that they were in accordance with the Supreme Court's order on remand.

exclusive; rather, they are illustrative only. *Johnson*, 124 Wn.2d at 66.

## II. COLLATERAL ESTOPPEL—NO BAR TO IMPOSITION OF EXCEPTIONAL SENTENCE ON REMAND

 A trial court may impose an exceptional sentence on remand even if it did not impose one at the earlier sentencing, unless estopped by a prior determination on the same facts in the original sentencing. *State v. Collicott*, 118 Wn.2d 649, 658, 827 P.2d 263 (1992). Citing this case, Tili argues that collateral estoppel prevented the trial court from imposing an exceptional sentence on remand. We disagree.

"Imposition of an exceptional sentence is directly related to a correct determination of the standard range," and "[t]hat determination can be made only after the offender score is correctly calculated." *Collicott*, 118 Wn.2d at 660. Here, at the time of the original sentencing, the law on scoring multiple penetrations during a sexual assault was unsettled. *Compare State v. Grantham*, 84 Wn. App. 854, 860, 932 P.2d 657 (1997) (Division Two, holding two different acts of sexual penetration did not constitute the same criminal conduct for sentencing purposes) *with State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993) (Division One, holding one act of sexual penetration and a second act of attempted sexual penetration constituted the same criminal conduct for sentencing purposes). Our Supreme Court resolved this issue *after* Tili's original appeal. *Tili*, 139 Wn.2d at 127.

██ It appears that at the time of Tili's original sentencing, the trial court was aware of the uncertainty in this area of law. The trial court, therefore, made a careful record—one that would allow it to impose an exceptional sentence on remand if the appellate court reversed on the issue of whether Tili's multiple sexual assaults on L.M. constituted "the same" or "separate and distinct criminal conduct." Because the court concluded that Tili's actions amounted to

separate and distinct criminal conduct, Tili's three convictions had to run consecutively as a matter of law. RCW 9.94A.400(1)(b). Thus, the court imposed a standard range sentence of 417 months.[4]

But the court added the following cautionary note:

> I think the record should reflect that if the court had considered defendant's argument about merger, that I do believe that *the various acts* constituting this offense could be used as a basis—along with the other reasons mentioned by the prosecuting attorney—could be used as a basis for an exceptional sentence upwards. And *in that event, the court feels that the sentence that the court is going to come up with would be a reasonable sentence.*

Report of Proceedings at 516 (emphasis added).[5] In this manner, the court created a record reserving the exceptional sentence option in the event that its consecutive sentences for multiple penetration, treated as separate and distinct crimes, should be overturned on appeal.

The record does not indicate, as Tili contends, that the court refused to impose an exceptional sentence on grounds of either deliberate cruelty or multiple penetrations as an aggravating factor. Rather, the court simply found that an exceptional sentence was not warranted *if* Tili's conduct amounted to *separate and distinct* conduct that, in turn, allowed imposition of three high-end sentences to run consecutively. Thus, collateral estoppel did not bar the imposition of an exceptional sentence on remand after the Supreme Court ruled that the sentences could not run consecutively because the rapes must be treated as the same conduct for sentencing purposes.

*Collicott* does not change this analysis. At Collicott's origi-

---

[4] Apparently, the court did not believe it could impose an exceptional sentence, in addition to the three consecutive high-end sentences, that would survive appellate review because an appellate court would find it clearly excessive. It noted, "As I read the case law and the statutory law in this State, I do not believe an exceptional sentence would be sustained by the appellate court of this state."

[5] The additional reasons (mentioned by the prosecuting attorney) to which the court refers included "deliberate cruelty."

nal sentencing, the trial court stated, "I'm not going to find an exceptional . . . sentence in this case." *Collicott*, 118 Wn.2d at 660. But that was not the case here.

In *Collicott*, the Supreme Court noted that at the original sentencing, the trial court "could have determined then that an exceptional sentence was justified, but instead concluded [it] 'was not going to find an exceptional . . . sentence.'" *Collicott*, 118 Wn.2d at 661 (quoting the sentencing court). Thus, the trial court in *Collicott* unqualifiedly refused to impose an exceptional sentence. Here, however, the sentencing court made sure the record reflected that if an appellate court accepted Tili's merger argument and overturned the consecutive sentences, "*the various acts*" and deliberate cruelty[6] would be the "basis for an exceptional sentence upwards." Thus, collateral estoppel did not preclude an exceptional sentence on remand.

### III. Exceptional Sentence—Aggravating Factors Sentence is Supported by Both the Law and the Record

Tili contends that even if the trial court were not collaterally estopped from imposing an exceptional sentence, we should remand for standard range sentencing because the aggravating factors relied on by the trial court were either invalid as a matter of law or not supported by the record. Again, we disagree.

In its Conclusions of Law, the trial court listed three aggravating facts as "substantial and compelling reasons justifying an exceptional sentence," two of which we consider here: (1) Tili's acts constituted deliberate cruelty as contemplated by RCW 9.94A.390(2)(a); and (2) Tili committed multiple rape offenses as contemplated by RCW 9.94A.390(2)(d)(i), which would otherwise draw no additional punishment if only standard range concurrent sen-

---

[6] "Deliberate cruelty" is inferred from the trial court's reference to other grounds mentioned by the prosecuting attorney: Prior to the court's remarks, the prosecutor had stated the grounds for imposing an exceptional sentence, including deliberate cruelty.

tences were imposed.[7] Moreover, the trial court further noted that any one of these factors alone would be sufficient to warrant an exceptional sentence. We consider the two remaining viable factors in turn.

## A. DELIBERATE CRUELTY

■ Deliberate cruelty is "gratuitous violence, or other conduct which inflicts physical, psychological, or emotional pain as an end in itself." *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989); *see also State v. Franklin*, 56 Wn. App. 915, 918, 786 P.2d 795 (1989) (holding same). Deliberate cruelty contemplates acts not usually associated with simply committing the offense. *State v. Payne*, 45 Wn. App. 528, 726 P.2d 997 (1986). Tili contends that his acts of violence and verbal threats were, as a matter of law, merely acts usually associated with first degree rape rather than gratuitous violence.[8] We disagree with Tili and concur with the trial court.

1. Demeaning Demand

■ First, Tili's demand that L.M. say she "liked it" when he penetrated her anus and vagina was not an element of the crime or the type of force otherwise calculated to exact compliance. Instead, it was calculated to inflict emotional or psychological pain on an unwilling victim by degrading her beyond the degradation of the rape itself. In that sense, Tili's action was analogous to that of the defendant rapist in *State v. Falling*, 50 Wn. App. 47, 55, 747 P.2d 1119 (1987),

---

[7] *See* RCW 9.94A.390. *See also* Findings and Conclusions.

[8] RCW 9A.44.040 provides, in pertinent part:

(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person by forcible compulsion where the perpetrator . . .

(a) Uses or threatens to use a deadly weapon or what appears to be a deadly weapon; or

. . . .

(c) Inflicts serious physical injury; . . . or

(d) Feloniously enters into the building or vehicle where the victim is situated.

who repeatedly called his victim "bitch" during the rape. There, given the context of the remark, the court held Falling's remark to be a manifestation of deliberate cruelty justifying an exceptional sentence. *Falling*, 50 Wn. App. at 55. Such a holding here seems even more appropriate where Tili forced the victim *herself* to utter the words likely to degrade her, thereby inflicting harm beyond that caused by the rape itself.

### 2. Gratuitous Violence

■ Second, Tili's parting blows to L.M.'s head, after the rapes and before fleeing the crime scene, were not aimed at overcoming her resistance to the rapes. On the contrary, L.M. was facedown and defenseless on the floor, and the police had entered the apartment. The rapes were over. Thus, this assault was gratuitous, deliberately cruel infliction of extra pain for its own sake.[9]

### 3. Multiple Penetrations

■ Third, Tili's multiple penetrations of different orifices with different objects constitute deliberate cruelty, above and beyond the act of rape itself, especially the penetrations with a sharp object. Washington courts have frequently held that multiple penetrations can justify an exceptional sentence on deliberate cruelty grounds. *See, e.g., State v. Vaughn*, 83 Wn. App. 669, 924 P.2d 27 (1996) (first degree rape); *State v. Herzog*, 69 Wn. App. 521, 849 P.2d 1235 (1993) (first degree rape); *Falling*, 50 Wn. App. 47 (first degree rape). *Herzog* relied on Minnesota case law[10] in reasoning that "[m]ultiple penetrations or multiple sexual

---

[9] Moreover, the initial assault with the frying pan was the subject of the second degree assault count; there was no separate assault charge for the post-rapes departing blows.

[10] Minnesota's sentencing statute served as a model for Washington's; therefore, Minnesota cases are persuasive authority in Washington. *State v. Nordby*, 106 Wn.2d 514, 521 n.5, 723 P.2d 1117 (1986) (Utter, J., dissenting). Herzog committed multiple acts of both anal and vaginal penetration with fingers and penis; the Washington court relied on a Minnesota case holding that "two forms of penetration (anal and vaginal) was a permissible aggravating factor justifying an exceptional sentence for a rape conviction." *State v. Herzog*, 69 Wn. App. at 527 (citing *State v. Stauffacher*, 380 N.W.2d 843 (Minn. Ct. App. 1986)).

acts over a period of time are more degrading and have a more serious impact on the victim than a single act of rape." *Herzog*, 69 Wn. App. at 527. Similarly, the *Vaughn* court reasoned that multiple penetrations "prolong the period of danger and degradation endured by the victim" and, as such, held that they may constitute deliberate cruelty in and of themselves. *Vaughn*, 83 Wn. App. at 678 (citing *Herzog*, 69 Wn. App. at 527).

We reject Tili's argument that because his rapes of L.M. occurred over a short period of time, they do not justify an exceptional sentence. In spite of Tili's insistence to the contrary, *Herzog* does not indicate that it took Herzog a significantly longer time to force his victim to perform fellatio and forcibly to penetrate both her anus and vagina with his fingers and penis than it took Tili to lick his victim's anus, to penetrate her vagina with a sharp object, to penetrate her anus with a sharp object, to attempt penile penetration of her anus, and then to penetrate her vagina with his penis. The time factor was not essential to *Herzog's* central holding, nor should it be here.

Second, duration alone runs counter to the logic of both *Herzog* and *Vaughn*. *Herzog* focused on the degradation of and impact on the victim. Clearly, multiple penetrations by multiple objects in multiple orifices, even over a short period of time, are more invasive, terrifying, and degrading than a single penetration; each subsequent penetration perpetuates the victim's fear and diminishes hope that the ordeal will end. Similarly, *Vaughn's* focus was on how multiple acts can "prolong the period of danger" endured by a victim. Clearly, successive penetrations extend the period of danger a victim endures. We reject Tili's proposition that solely because of a difference in duration, multiple penetrations of one rape victim would be grounds for an exceptional sentence but multiple penetrations of another rape victim would not.

Any one of these three actions constituted deliberate cruelty justifying an exceptional sentence.

### B. Multiple Penetrations as Aggravating Factor

The Washington Supreme Court held that Tili's rapes constituted the "same criminal conduct" for criminal history sentencing purposes. But in so doing, it did not prohibit using multiple penetrations as aggravating factors under RCW 9.94A.390(2)(d)(i) for resentencing on remand.

■■ ■■ RCW 9.94A.390(2)(d)(i) makes "multiple incidents" a statutory aggravating factor for courts to consider in an exceptional sentence determination. Although the statute refers to multiple incidents only in the context of major economic offenses, our Supreme Court has held that multiple incidents can justify an exceptional sentence in other contexts. *State v. Dunaway*, 109 Wn.2d 207, 219, 743 P.2d 1237 (1987).[11] Moreover, in a rape case, the appellate court deemed multiple acts sufficient "in themselves [to] establish a greater level of culpability than is contemplated by the Legislature in establishing the punishment for a crime that can be committed by a single act." *Vaughn*, 83 Wn. App. at 677. Thus, Washington courts have, as a matter of law, recognized multiple incidents as an aggravating factor in assaultive crimes.

■■ Accordingly, the trial court's third reason (Conclusion of Law III) justified a sentence outside the standard range, assuming there was evidentiary support in the record. And there was sufficient evidence to support the resentencing court's conclusion of law that Tili's multiple offenses amounted to an aggravating factor as contemplated by RCW 9.94A.390(2)(d)(i). Again, Tili does not contest the trial court's findings that he licked the victim's anus, placed a sharp object in both her anus and vagina, attempted to penetrate her anus with his penis, and penetrated her vagina with his penis. As such, they are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). They constitute sufficiently substantial evidence to

---

[11] *See also State v. Armstrong*, 106 Wn.2d 547, 723 P.2d 1111 (1986) (analogizing multiple injuries to an assault victim to multiple incidents per victim in major economic offense).

support the trial court's finding the multiple incidents to be an aggravating factor.[12] Even if the findings Tili does challenge[13] were unsupported by the record, the remaining findings are sufficiently "substantial and compelling" to justify his exceptional sentence.

Finally, Tili suggests that at resentencing, the trial court relied on aggravating factors not enunciated at the original sentencing; but this is not the case. At the first sentencing, the trial court stated that if Tili's various acts were merged, those *"various acts . . .* along with the *other reasons mentioned by the prosecuting attorney*—could be used as a basis for an exceptional sentence upwards." Report of Proceedings at 516 (emphasis added). Those *other reasons* the prosecuting attorney had mentioned included "deliberate cruelty" and "particular vulnerability."

At the second sentencing, on remand from the Supreme Court, the trial court stated that it did not believe its previous statements foreclosed finding aggravating circumstances. The trial court then ruled that Tili merited an exceptional sentence because (1) of the victim's vulnerability, (2) Tili's *"acts* constituted deliberate cruelty," and (3) there were "multiple incidents" as contemplated by RCW 9.94A.390(2)(d)(i) (emphasis added). The trial court's reference to Tili's "acts" and the "multiple incidents" at the remand sentencing mirror the "various acts" that it had previously noted at the original sentencing.

Thus, the record counters Tili's assertion that the trial court improperly relied on new aggravating factors at the resentencing.

---

[12] *See Nordby*, 106 Wn.2d at 517-18 (whether trial court's reasons for imposing exceptional sentence are supported by record is factual determination and appellate court will uphold those reasons unless they are clearly erroneous); *State v. Scott*, 72 Wn. App. 207, 213, 866 P.2d 1258 (1993) (trial court's reasons are clearly erroneous only if not supported by substantial evidence).

[13] Tili contends Findings of Fact II. d, e, kk, oo, pp, and qq are not supported by the record.

## IV. ERRONEOUS CALCULATION OF OFFENDER SCORE DID NOT BAR EXCEPTIONAL SENTENCE

Finally, Tili argues that the trial court incorrectly calculated his offender score before imposing the exceptional sentence and, therefore, we must remand for resentencing based on a correct offender score. He relies primarily on the fact that, after remand from the Supreme Court, the trial court relied on the State's memorandum to miscalculate the first degree burglary sentence range and offender score in its judgment and sentencing, contrary to its own Finding of Fact I.[14] The State responds that any miscalculation did not prejudice Tili because the trial court correctly calculated his offender score on the first degree rape conviction and it was for that crime that the court imposed the exceptional sentence.

We review calculations of statutory standard ranges and offender scores de novo. *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997); *State v. McCraw*, 127 Wn.2d 281, 289, 898 P.2d 838 (1995). The State concedes that in the Judgment and Sentence entered on remand, the trial court incorrectly included standard range calculations for rape counts II and III, which the Supreme Court had ruled were the "same criminal conduct." But the State also correctly notes that the trial court did not impose additional, consecutive sentences of confinement for these two other rape counts; rather, the trial court ran them concurrently. Accordingly, we agree with the State that the trial court's inclusion of these standard ranges on the Judgment and Sentence did not prejudice Tili.

Likewise, the State concedes that the Judgment and Sentence recites the wrong standard range for the first degree burglary conviction. Again, the record refutes Tili's contention that this recitation of an incorrect standard range for burglary prejudiced him. Tili's sentence for the less serious burglary count ran concurrently with the rape sentence. Even if the trial court had imposed the high end of the correct standard range for burglary and the low end

---

[14] *See* Clerk's Papers (Judgment and Sentence) at 277-85.

of the standard range for rape (rather than an exceptional sentence), the time Tili would have served for burglary would still have been shorter than the time he is to serve concurrently for the first degree rape. Because the trial court imposed the exceptional sentence solely on the aggravating factors applicable to the first rape count, the burglary score had no effect on that exceptional sentence and Tili suffered no prejudice as a result of the latter's incorrect calculation.

The State further concedes that the standard range for the count I rape is inexplicably wrong in the Judgment and Sentence. When the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is generally the remedy unless the record clearly indicates that the sentencing court would have imposed the same sentence anyway. *Parker*, 132 Wn.2d at 189; *see also State v. Ross*, 71 Wn. App. 556, 567, 861 P.2d 473, 883 P.2d 329 (1993). Here, the record clearly indicates that the trial court intended to impose the exceptional sentence exclusively on the count I rape conviction and that *any one* of the three aggravating factors it listed in its Conclusions of Law would justify the 417-month exceptional sentence.

Tili argues that the trial court's choice of a 417-month exceptional sentence is arbitrary because it is precisely the same total sentence that the trial court had imposed originally for three consecutive sentences for the three rape convictions. We disagree. The record demonstrates to the contrary: At both the original and remand sentencings, and on remand, the trial court clearly indicated that 417 months was an appropriate sentence for these crimes, regardless of whether imposed as consecutive, standard sentences for three separate rapes or as one exceptional sentence for the same course of conduct, which included multiple, deliberately cruel acts.

Affirmed.

ARMSTRONG, C.J., and HOUGHTON, J., concur.

Review granted at 145 Wn.2d 1026 (2002).