IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39504-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW C. MITTLESTADT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J.P.T.* — Matthew Mittlestadt appeals the sentence imposed after the

court accepted his guilty plea to four sex offenses charged in this matter. The sentencing

court rejected the parties' joint recommendation of a standard range sentence, imposing

exceptional consecutive sentencing on two of the counts. Mr. Mittlestadt contends that

the "free crimes" aggravator is the only basis that could possibly support the exceptional

sentence, and that it does not apply. Also, and for the first time on appeal, he challenges

three conditions of community custody. In a pro se statement of additional grounds, Mr.

Mittlestadt challenges a fourth community custody condition.

We reject all of the challenges and affirm the judgment and sentence.

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time
argument was held on this matter. She is now serving as a judge pro tempore of the court
pursuant to RCW 2.06.150.

No. 39504-9-III
*State v. Mittlestadt*

## FACTS AND PROCEDURAL BACKGROUND

In December 2019, the State charged Matthew Mittlestadt with two counts of rape of a child in the second degree and one count of rape of a child in the third degree in cause No. 19-1-01633-18 (the "2019 case"). The offense conduct was alleged to have occurred between September 2012 and September 2015. The charges were later amended to three counts of rape of a child in the third degree.

In December 2021, the State filed the charges in this case. Mr. Mittlestadt was charged with two counts of dealing in depictions of minors engaged in sexually explicit conduct in the second degree, one count of attempt to sexually exploit a minor, and one count of communication with a minor for immoral purposes. The offense conduct for these charges was alleged to have occurred on or between July 1 and July 9, 2021.

Mr. Mittlestadt reached an agreement to plead guilty to the charges in both cases. Section 6 of his statement on plea of guilty in this case stated in relevant part, "**In Considering the Consequences of My Guilty Plea, I Understand That: . . .**

(b)     Each crime with which I am charged carries a maximum sentence, a fine, and a ***Standard Sentence Range*** as follows:

| COUNT NO. | OFFENDER SCORE | STANDARD RANGE ACTUAL CONFINEMENT (not including enhancements) | PLUS Enhancements* | COMMUNITY CUSTODY | MAXIMUM TERM AND FINE |
|---|---|---|---|---|---|
| 1 & 2 | 18 | 72 to 96 mos | | 36 mos | 10 yrs $20K |
| 3 | 18 | 60 mos | | / | 5 yrs. $10K |
| 4 | 18 | 51-60 mos. | | / | 5 yrs - $10K |

2

No. 39504-9-III
*State v. Mittlestadt*


Clerk's Papers (CP) at 24.

In exchange for guilty pleas in the 2019 case and this case, the parties agreed that they would jointly recommend that in this case, Mr. Mittlestadt would serve concurrent sentences of 83 months on each of count I and count II, and 60 months on each of count III and count IV, to run concurrent to 60 months on each of the three counts in the 2019 case. The parties jointly agreed to recommend that the court order 36 months of community custody.

The plea agreement identified as "[o]ther agreement[s]," a handful of conditions of supervision, and that:

> The prosecution will recommend other crime related conditions of supervision as indicated by DOC [the Department of Corrections] in the PreSentence Investigation report (PSI). Defendant may object to conditions proposed by DOC or recommended by the State, except that the <u>Defendant may not object and instead agrees to specifically recommend and support the conditions of supervision enumerated herein.</u>

CP at 62.

In April 2022, the parties filed the plea agreement and statement on plea of guilty and appeared in court for the entry of a change of plea in this case. The court reviewed the terms of the agreement and factual basis for the plea, and accepted the plea. Sentencing was scheduled to occur in a month. A PSI was ordered.

3

The PSI proved critical of the parties' recommended sentences. DOC evidently advocated for a longer sentence because it viewed Mr. Mittlestadt as refusing to accept accountability and as engaged in victim-blaming.[1]

Sentencing of the guilty pleas in the 2019 case and this case were addressed at a joint hearing. The prosecutor asked the court to follow the joint recommendations. He represented that in the 2019 case there were significant proof issues. He characterized the State's case on the charges in this case as stronger, but said the State's primary concern was that Mr. Mittlestadt get the full 36 months' community custody following his release, given its concern about his risk of reoffending. The prosecutor acknowledged the reservations expressed in the PSI, but told the court, "I think what we've negotiated is fair. It is just. I think it holds the Defendant accountable, gives him a chance to rehabilitate." Rep. of Proc. (RP) at 37.

The prosecutor pointed out that "[t]here are a lot of conditions we're asking you to put into the community custody" in this case, and that he and defense counsel had agreed to the appendix H conditions with only a couple of revisions. RP at 38. He explained that one change had been made to condition 5, which had been revised to provide that Mr. Mittlestadt would not need treatment provider approval for sexual contact with his

---

[1] The PSI was not designated for inclusion in the record on appeal. We infer that its objections must have been fairly strong from the sentencing court's comments and the prosecutor's and defense counsels' acknowledgments of its tenor.

4

current wife. Another change had been made to condition 11, which was revised to require Mr. Mittlestadt to submit to urinalysis, but not breath analysis.

After hearing from an advocate who presented a victim impact statement from the minor in the 2019 case, the court posed a question to the prosecutor about exceptional sentencing options. The prosecutor answered the question, at the same time standing by his recommendation:

> THE COURT: I do have a question [addressing the prosecutor]. I'm not saying this is what I'm going to do, but I do have a question about whether or not there's a legal issue with it. But if I was to—because of the offender score, I can sentence him to consecutive time, and I could build in community custody time in one of the consecutive sentences. Right?
>
> [PROSECUTOR]: Your Honor, I support the plea agreement. I think, to answer Your Honor's legal question, my understanding is that, if the Court has a legal basis to run crimes consecutive, the statutory maxes are also consecutive, so the answer would be yes.
>
> THE COURT: That's my understanding as well. I'm not saying I'm going to do that, but I want that to be something everybody has a chance to respond to, and so that's why I asked the question.

RP at 45-46.

The court then heard from Mr. Mittlestadt's counsel in this case. He zealously advocated for the agreed recommendation, while at the same time acknowledging the objections raised in the PSI and the sentencing court's concerns. Addressing the community custody, he said:

> I've reviewed appendix H with Mr. Mittlestadt. I've addressed the issues that I saw from a legal perspective with that appendix. I think what [the prosecutor] and I have crafted now is legally sufficient, and it is also

sufficient in the sense that it's going to provide proper supervision of Mr. Mittlestadt.

RP at 49.

The court then heard from Mr. Mittlestadt's counsel in the 2019 case, who also advocated strenuously for the jointly recommended sentence. It heard from Mr. Mittlestadt.

In announcing its sentencing decision, the court began by stating, "I do my very best to follow plea agreements. I believe in plea agreements. I believe in the purpose of plea agreements." RP at 56. But after brief elaboration, the court quickly turned to Mr. Mittlestadt's statements to DOC in connection with the PSI, which it characterized as "borderline offensive in the sense that he essentially blames the victims, tries to make himself out to be the victim." RP at 57. It rejected the defense lawyers' arguments that Mr. Mittlestadt was a changed man. It announced it would follow the parties' recommendation for the 2019 case, including that the sentences in that case would run concurrent to the sentences in this case. But in this case, the court said it would impose an exceptional sentence by running counts I and II consecutively, imposing 96 months' confinement for count I and 24 months (a downward deviation) for count II, for a total term of confinement of 120 months. Those sentences would run concurrent to the concurrent 60 month sentences on counts III and IV. It imposed the 24 months' community custody on count I that would take that sentence up to the 120 month

6

statutory maximum, and 36 months' community custody on count II, for a total of 60

months' community custody. It accepted the appendix H conditions as modified by the

parties.

The court later entered findings of fact and conclusions of law in support of the

exceptional sentence. Among its findings were the following:

IV.

That the defendant has committed multiple current offenses and the
defendant's high offender score results in some of the current offenses
going unpunished. RCW 9.94A.535(2)(c).

V.

That in balancing the multiple purposes of RCW 9.94A, the
Sentencing Reform Act, the interests of justice are best served by an
exceptional sentence as to counts I and II.

VI.

That the defendant appears to remain a danger to the community, as
evidenced by the time passed between dates of offense as between cause
19-1-01633-18 and this cause and as evidenced by the similar nature of the
charges, that is, sexual felonies against minors, including rape and sexual
exploitation.

VII.

That the defendant's statements to the court at sentencing through
the Pretrial Sentencing Investigation report are disturbing and indicative of
someone who does not understand his impact on his victims and on the
community and who, though attesting to guilt and shame, does not
appreciate the dangerousness and harmfulness of his recidivist conduct as
represented by his convictions for these seven felony sex offenses.

. . . .

IX.

> That a paramount goal of the Court in ordering the sentence in this cause is to protect the community and community safety is the focus of the Court's sentence in this case.

CP at 46-47. The court's judgment and sentence in this case identified only the crimes charged in this case as "current offenses," identifying the three convictions for crimes charged in the 2019 case as "criminal history," and identifying each as "pending but counted." CP at 34-35 (some capitalization omitted).

Mr. Mittlestadt appealed to Division Two of this court. In February 2023, the case was administratively transferred to this division. A panel considered the appeal without oral argument.

ANALYSIS

Mr. Mittlestadt makes five assignments of error on appeal. In the first two, he contends that the trial court's exceptional sentence is either based on misconstruing the "free crimes" aggravator authorized by RCW 9.94A.535(2)(c) or relies on its findings VI, VII or IX in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The remaining three assignments of error challenge conditions of his community custody to which he made no objection at sentencing. We address the assigned errors in the order presented.[2]

---

[2] In his reply brief, Mr. Mittlestadt raises a further argument that the State's response brief advocates for an exceptional sentence, thereby breaching the plea

8

I.    THE "FREE CRIMES" AGGRAVATOR WAS PROPERLY APPLIED

In *Apprendi v. New Jersey*, the United States Supreme Court held that the due process clause of the Fourteenth Amendment and Sixth Amendment, taken together, require that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).  In *Blakely*, the Supreme Court clarified that the "statutory maximum" did not refer to the maximum sentence authorized by the legislature for the crime but meant, instead, the maximum sentence a trial judge was authorized to give without finding additional facts—in the case of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the top of the standard sentencing range.  *State v. Evans*, 154 Wn.2d 438, 441-42, 114 P.3d 627 (2005).

In response to the Court's decision in *Blakely*, the Washington Legislature amended the SRA.  In keeping with the rule articulated in *Blakely*, the 2005 amendments provided that most of the aggravating factors that a sentencing court previously could have cited as the basis for imposing an exceptional sentence henceforth either must be

agreement and entitling him to specific performance.  He does not point to the language from the State's brief on which he relies, or the terms of the plea agreement that it allegedly breaches.  If a trial court imposes a sentence different from what was contemplated by a plea agreement, the prosecutor may defend the sentence on appeal and argue against resentencing.  *State v. Gleim*, 200 Wn. App. 40, 44-45, 401 P.3d 316 (2017) (citing *State v. Arko*, 52 Wn. App. 130, 132, 758 P.2d 522 (1988)).  Mr. Mittlestadt's argument is too factually vague and legally unsound to warrant further consideration.

admitted by the defendant or found by a jury in order to provide the basis for an upward

departure from the standard sentence range. *State v. Newlun*, 142 Wn. App. 730, 739,

176 P.3d 529 (2008) (citing LAWS OF 2005, ch. 68, §§ 3-4, *codified as* RCW 9.94A.535-

.537). It also identified a few instances in which a trial court could depart upward based

on its own findings, one being RCW 9.94A.535(2)(c), the "free crimes" aggravator.

RCW 9.94A.535(2)(c) provides:

> The trial court may impose an aggravated exceptional sentence
> without a finding of fact by a jury under the following circumstances:
> . . . .
> (c) The defendant has committed multiple current offenses and the
> defendant's high offender score results in some of the current offenses
> going unpunished.

Stated differently in *Newlun*, "If the number of current offenses, when applied to the

sentencing grid, results in the legal conclusion that the defendant's presumptive sentence

is identical to that which would be imposed if the defendant had committed fewer current

offenses, then an exceptional sentence may be imposed." 142 Wn. App. at 743.

In its findings and conclusions in support of Mr. Mittlestadt's exceptional

sentence, finding of fact IV cites RCW 9.94A.535(2)(c) as the statutory basis for its

exceptional sentence. Mr. Mittlestadt contends that the court misapplied the statute

and/or violated *Blakely* in imposing his sentence.

Turning first to *Blakely*, Mr. Mittlestadt does not demonstrate a constitutional

violation, because the terms of confinement imposed on count I and count II are each

within the standard range. His sentences for the two counts are exceptional only by running consecutively. The reasoning of *Apprendi* and *Blakely* does not extend to exceptional consecutive sentencing. *Oregon v. Ice*, 555 U.S. 160, 168, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). "The decision to impose sentences consecutively is not within the jury function that 'extends down centuries into common law.'" *Id.* (quoting *Apprendi*, 530 U.S. at 477). Relying on *Ice*, the Washington Supreme Court reached the same result where the trial court imposed exceptional consecutive sentences under RCW 9.94A.589(1)(a), recognizing that *Ice* "squarely overrule[d]" its own, earlier decision to the contrary. *State v. Vance*, 168 Wn.2d 754, 762, 230 P.3d 1055 (2010).

In arguing that the trial court erroneously relied on RCW 9.94A.589(1)(a) and RCW 9.94A.535(2)(c) as its statutory basis for imposing an exceptional sentence, Mr. Mittlestadt makes an obscure argument that in arriving at his offender score of 18, "[s]ix current sex offenses counted as three points each," and "[t]he nature of his offenses was necessarily already considered in 'computing the presumptive range for the offense.'" Br. of Appellant at 20 (quoting *State v. Norby*, 106 Wn.2d 514, 723 P.2d 1117 (1986)). He cites as support *Norby*, and an unpublished decision in *State v. Phelps*, 2 Wn. App. 2d 1051, 2018 WL 1151975 (2018).

At issue in *Norby* was whether a trial court's reasons justified its imposition of an exceptional sentence outside the standard range. The Court of Appeals held that two of its three reasons did, but one did not, because the third was a factor necessarily

considered in computing the presumptive range for the offense. 106 Wn.2d at 518-19.

The requirement that the trial court's reasons "justify a sentence outside the standard

range for that offense" appeared at the time at former RCW 9.94A.210(4) (1981); the

same requirement is now codified at RCW 9.94A.585(4). *Id*. at 517. Norby was

convicted of vehicular assault. The reason given for the upward departure that the Court

of Appeals held did *not* justify it was the seriousness of the victim's injuries. *Id.* at 516-

17. The Supreme Court agreed with this court that because infliction of "serious bodily

injury" was a prerequisite for vehicular assault, the severity of Norby's victim's injuries

had been considered in setting the presumptive range.

Here, the basis for the exceptional sentence was that Mr. Mittlestadt's presumptive

sentence for his four offenses was identical to that which would be imposed if he had

committed only count I or count II. That crimes would go unpunished is not something

that had been taken into consideration in setting the presumptive range.

Turning to *Phelps*, Mr. Mittlestadt would apparently like us to read that

unpublished decision as precluding application of the "free crimes" aggravator whenever

some points are multiplied in calculating the offender score, and the result is a high

offender score. But the decision in *Phelps* was specific to its facts. Phelps was being

sentenced for two offenses: hit and run injury accident, and taking a motor vehicle

without permission in the second degree (TMVWOP). In arriving at his offender score

for TMVWOP, each of Phelps's prior convictions for TMVWOP and theft of a motor

vehicle were counted as three points. He had six priors, contributing 18 points to his score. Adding a point for the hit and run injury accident conviction resulted in a total offender score of 19.

His offender score for the hit and run injury accident count was only 6, however, and it carried the longer standard range sentence: 33 to 43 months, whereas the standard range sentence for the TMVWOP charge was 22 to 29 months. As pointed out by the State, there was no free crime, because the hit and run injury accident charge carried the longer standard range, and the TMVWOP conviction increased his offender score on that count by a point. The appellate court agreed, explaining:

> The current conviction of TMVWOP in the second degree increased the offender score and standard sentence range for the conviction of hit and run injury accident. Therefore, Phelps' presumptive sentence was greater than it would have been if he had committed fewer current offenses.

2018 WL 1151975 at *4.

By contrast, Mr. Mittlestadt's charges for dealing in depictions of minors engaged in sexually explicit conduct in the second degree carried the longest standard range of his convictions, and his sentence for each of those convictions would remain unchanged whether his offender score was 9 or 18. Had he been sentenced for only count I or count II, his sentencing range would be the same. Because his presumptive sentence was identical to what it would have been if he had committed fewer current offenses, the "free crimes aggravator" was properly applied.

13

RCW 9.94A.535(2)(c) is the aggravating factor explicitly relied on by the sentencing court's finding IV, and it applies. Accordingly, there is no reason for Mr. Mittlestadt's strained reading of findings VI, VII and IX as if *they* were the factors supporting an upward departure, yet were not found beyond a reasonable doubt by a jury. Instead, as argued by the State, those findings are reasonably read as complying with the statutory command that the sentencing court consider the purposes of the SRA in finding that substantial and compelling reasons justify an exceptional sentence. *See* RCW 9.94A.535.

II.     THE CHALLENGED COMMUNITY CUSTODY CONDITIONS, IF ERROR, WERE INVITED

For an objection to a community custody condition to be entitled to review for the first time on appeal, (1) it must be manifest constitutional error or a sentencing condition that, as explained in *State v. Blazina*, 182 Wn.2d 827, 833-34, 344 P.3d 680 (2015), is "illegal or erroneous" as a matter of law, and (2) it must be ripe. *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019). And courts never need consider claims of error—even constitutional error—that were invited or waived. *Id.* at 582 (citing *State v. Casimiro*, 8 Wn. App. 2d 245, 249, 438 P.3d 137 (2019)); *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) ("[E]ven if error was committed, of whatever kind, it was at the defendant's invitation and he is therefore precluded from claiming on appeal that it is reversible error.").

Mr. Mittlestadt challenges three of the conditions reflected in appendix H to his judgment and sentence, including the two conditions that were modified at his request. The State defends the challenged community custody conditions on their merits, but it also argues that we can affirm any alleged error as invited. We find that invited error is a cogent reason for affirming the challenged conditions without further analysis.

The invited error doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal. *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002). To be invited, the error must be the result of an affirmative, knowing, and voluntary act. *State v. Lucero*, 152 Wn. App. 287, 292, 217 P.3d 369 (2009), *rev'd on other grounds*, 168 Wn.2d 785, 230 P.3d 165 (2010); *State v. Mercado*, 181 Wn. App. 624, 630, 326 P.3d 154 (2014).

Error was not invited by the plea agreement. While Mr. Mittlestadt acknowledged that the State could recommend other crime-related conditions of supervision based on the PSI, he only agreed to *support* the conditions of supervision specifically "enumerated herein." CP at 62. The conditions he challenges are in appendix H, but were not among those enumerated in the plea agreement.

By the time of the sentencing hearing, however, Mr. Mittlestadt had good reason to endorse additional conditions. In attempting to persuade the sentencing court to accept the joint sentencing recommendation despite objections raised in the PSI, Mr. Mittlestadt's lawyer silently acquiesced as the prosecutor told the court, referring to

15

appendix H, that "in that appendix, I talk to [Mr. Mittlestadt's lawyer], and we are asking

for, essentially, a few minor revisions. *And we agree on the revisions and agree on the*

*remainder of the appendix*." RP at 38 (emphasis added).

When it was his turn to speak, Mr. Mittlestadt's attorney endorsed the importance

of supervision, stating (as we recounted earlier):

> I've reviewed appendix H with Mr. Mittlestadt. I've addressed the
> issues that I saw from a legal perspective with that appendix. I think what
> [the prosecutor] and I have crafted now is legally sufficient, and it is also
> sufficient in the sense that it's going to provide proper supervision of Mr.
> Mittlestadt.

RP at 49. He argued that the sentence proposed "is a significant sentence . . . [a]nd he's

going to have significant supervision." *Id.*

It was an affirmative, knowing, voluntary and tactically sound decision for Mr.

Mittlestadt's lawyer to present his best case for the joint recommendation by emphasizing

Mr. Mittlestadt's agreement to "significant supervision." *If* any of the challenged

conditions are erroneous, we have no hesitancy in affirming them as invited error.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Mr. Mittlestadt challenges condition

22 from appendix H, which provides:

> Obtain mental health treatment assessment, and follow through with all
> recommendations of the provider, including taking medication as
> prescribed. Should mental health treatment be currently in progress, remain
> in treatment and abide by all program rules, regulations, and requirements.

16

> Sign all necessary releases of information and complete the recommended programming.

Mr. Mittlestadt contends the condition violates his constitutional right to privacy by requiring him to take prescribed medications.

During the sentencing hearing, the lawyer defending Mr. Mittlestadt in the 2019 case emphasized the mental health treatment condition as something that would "further protect the community," and a reason the court should adopt the jointly recommended sentence. RP at 51. For the same reason we reject the challenges to community custody conditions raised in the opening brief, we reject this challenge. If error, it is invited error.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.P.T.

WE CONCUR:

_____                    _____
Lawrence-Berrey, A.C.J.                       Pennell, J.

17