IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30707-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CASMER JOSEPH VOLK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Casmer Joseph Volk appeals his conviction and exceptional

sentence for first degree child rape, contending:

> (1) the trial court erred in admitting hearsay repetition of the child victim's out-of-court statements without holding a statutorily-mandated reliability hearing;
> (2) he received ineffective assistance of counsel when his trial attorney waived the reliability hearing and did not object to the statements;
> (3) insufficient evidence exists to prove the elements of the crime or an aggravating circumstance based on the child's particular vulnerability;
> (4) the sentencing court erred by failing to enter written factual findings and legal conclusions supporting an exceptional sentence;
> (5) the court erred by imposing an excessively lengthy sentence; and
> (6) the court erred by imposing community custody conditions that are either unconstitutionally vague or statutorily unauthorized.

In a statement of additional grounds for review (SAG), Mr. Volk expresses his

concerns regarding evidence sufficiency, his trial attorney's effectiveness, the child's

competence to testify, and the conduct of the forensic interviews.

No. 30707-7-III
*State v. Volk*

We disagree with Mr. Volk on all issues except those regarding certain community custody conditions relating to pornography and alcohol. Therefore, we affirm in part, reverse in part, and remand for the limited purpose of correcting Mr. Volk's judgment and sentence as specified below.

FACTS

On April 28, 2011, Travis and Selena Hamblin left their four-and-one-half-year-old son, L.H., in the care of their friend and daycare provider, Diedre Cleary, while they vacationed in Oregon. Ms. Cleary lived in Ellensburg with her boyfriend, Mr. Volk, who in North Dakota had twice previously been convicted of surreptitious intrusion, a sex crime. On April 30, 2011, Ms. Cleary took L.H. to the local hospital where a physician prescribed him an antibiotic to treat his recurring ear infection. L.H. soon had diarrhea, a common side effect of the antiobiotic. Rectal bleeding and anal irritation sometimes accompany severe diarrhea.

On May 1, 2011, Mr. Volk was alone with L.H. for about two hours. Then, the Hamblins returned from their vacation. Mr. Volk and Ms. Cleary brought L.H. home, where Mr. Hamblin had him take a shower and go to bed. The next morning, L.H. cried to Ms. Hamblin about his buttocks, saying, "my butt hurts." Report of Proceedings[1] (RP) at 124, 135. She thought he had a diaper rash. Upon inspection, she saw his anus was reddened and inflamed. Still thinking he had a diaper rash, she applied petroleum jelly to his anus. He strongly protested as she did so. When she asked him,

---

[1] Unless otherwise specified, all citations to the Report of Proceedings reference the transcriptions from January 10 to March 12, 2012.

2

"[W]hat happened? Why does your butt hurt?," L.H. answered, "Cas hurt me." RP at 138. Then, when Ms. Hamblin asked him, "how did [Mr. Volk] hurt you?" L.H. answered, "He put macaroni, lots of cream up my butt and his pee pee in my butt." *Id.*

Lacking a vehicle and expecting Mr. Volk's return to deliver a car seat, Ms. Hamblin decided to wait before taking action, so as to avoid erratically confronting Mr. Volk with a scurrilous accusation. L.H. stood near the door upon Mr. Volk's arrival with the car seat. When Ms. Hamblin walked around a corner, L.H. said "you hurt me" to Mr. Volk. RP at 142, 608. After Mr. Volk left, Ms. Hamblin arranged transportation for herself and L.H. to the hospital.

Registered Nurse and Sexual Assault Nursing Examiner Megan Day met L.H. and Ms. Hamblin in an examination room where a victim's advocate joined them. When Ms. Day said, "Hi, how are you doing today?," L.H. replied, "My butt hurts. He – that guy named Cas he put macaroni in my butt and lots of cream and he put his pee pee in my butt and it hurts." RP at 174. L.H. repeated this statement several times in response to Ms. Day's open-ended questions. Upon inspection, she saw blood in his underwear and around his scrotum. She saw redness around his anus and noted it was tender. With the assistance of a physician, Ms. Day inserted an anus scope into L.H.'s rectum, performed swabs, and inspected the tissue, but could not find the source of bleeding. The absence of an acute injury was not unusual because rectal injuries often begin healing within 24 hours and complete healing quickly, especially among children. L.H. whimpered and cried in pain during this procedure. When Ms. Day asked him to identify which face on a chart represented his pain level, L.H. immediately pointed to

3

two faces indicating pain at or near the most excruciating level possible. He then grabbed his buttocks and cried.

Kittitas County Sheriff's Detective Darren Higashiyama visited the examination room with a police officer, knelt on one knee beside L.H., and introduced himself. Without prompting, L.H. said, "I have something to tell you." RP at 344. When Detective Higashiyama asked him, "well, what is that?" L.H. answered, "Cas put macaroni, lots of cream, and his pee pee in my butt." *Id.*

On May 4, 2011, Ellensburg Police Detective Sergeant Brett Koss interviewed L.H. at the police station with the assistance of a social worker and victim's advocate. Ms. Hamblin joined them later in the interview to help calm L.H. While L.H. contradicted himself at times, he mostly reiterated his prior statements in response to open-ended questions. For example, when Detective Sergeant Koss asked him, "So, can you tell me what happened that made your butt hurt?," L.H. answered, "Cas . . . put his pee pee in my butt." Ex. 8, at 2:11:20-:11:42 p.m., May 4, 2011; *see* RP at 244. However, in moments of apparent confusion or coyness, L.H. later equivocated on whether he was telling the truth or a lie.

On May 11, 2011, Child Sexual Assault Forensic Interviewer Lisa Larrabee interviewed L.H. in the presence of Ms. Hamblin. Again, L.H. reiterated his prior statements in response to open-ended questions. For example, when Ms. Larrabee said, "Now I want to talk to you about why you came to talk to me today," L.H. replied, "Cas hurt me. . . . He put his pee pee in my butt and stuck a whole lot of cream and put macaroni in my butt . . . . The cream first and then the macaroni and then his pee pee."

4

Ex. 24, at 2:40:42-:41:19, :44:59-:45:08 p.m., May 11, 2011; *see* RP at 425. Then, L.H. clearly and coherently divulged additional details. For example, when Ms. Larrabee asked him, "What did it feel like when [Mr. Volk] put his pee pee in your butt?," L.H. answered, "Like, it felt, like, soft, like soft and warm. . . . Like, like, it was all the way in my butt." Ex. 24, at 2:47:10-:47:37 p.m., May 11, 2011. Soon, when Ms. Larrabee asked him, "And, and what was [Mr. Volk] doing with his feet and legs when his pee pee was in your butt?," L.H. answered, "He was going like this," and demonstrated by gyrating his hips in a circular movement. Ex. 24, at 2:48:35-:48:49 p.m., May 11, 2011; *see* RP at 417-18. L.H. explained further, "My hands were down on the ground. . . . 'Cause, 'cause I was bending over"; "I was in . . . a bed"; and Ms. Cleary walked in the room, saying "Get off of [L.H.]!" Ex. 24, at 2:48:49-:49:07, :51:14-:51:20, :53:40-:54:05, 3:12:00-:12:10 p.m., May 11, 2011; *see* RP at 423, 429.

The State charged Mr. Volk with first degree child rape. Additionally, the State alleged as an aggravating circumstance that when Mr. Volk committed the crime, he knew or should have known L.H. was particularly vulnerable or incapable of resistance. After holding a competency hearing, the trial court ruled L.H. was not competent to testify. A mistrial ensued because the jury could not reach a unanimous verdict. After holding another competency hearing, the court ruled L.H. was now competent to testify. On retrial, the State elicited the following testimony from L.H.:

Q. Why are you here today?
A. To tell the truth.
Q. To tell the truth about what, [L.H.]?
A. About Cas.
Q. What about Cas?

5

A. Cas hurt me.

. . . .

Q. How did Cas hurt you?

A. He put cream in my butt. He put cream in my butt and his pee pee in my butt and macaroni in my butt.

RP at 42. Additionally, the court admitted hearsay repetition of L.H.'s out-of-court statements without holding the reliability hearing required by RCW 9A.44.120(1). Mr. Volk never objected on this ground and never requested this hearing. The jury found him guilty as charged and, by special interrogatory, found an aggravating circumstance based on L.H.'s particular vulnerability.

The sentencing court concluded this aggravating circumstance was a substantial and compelling reason for imposing an exceptional sentence. Accordingly, the court sentenced Mr. Volk to a total of 28 years' imprisonment, 10 years above the standard range. The court then ordered him to comply with community custody conditions relating to pornography and alcohol:

[X] (9) Defendant shall not purchase, possess, and/or consume any intoxicating liquors.

[X] (10) Defendant shall not enter into or remain in establishments where alcohol is the main source of revenue. This does not include a restaurant which is attached to but separate from a bar/lounge area.

. . . .

[X] (18) Defendant is not to purchase, possess, or use pornographic material. Pornographic material will be defined by the treatment provider, the supervising Community Corrections Officer, and the Court.

Clerk's Papers (CP) at 194-95. Mr. Volk appealed.

## ANALYSIS

### A. RCW 9A.44.120(1) Reliability

The issue is whether the trial court reversibly erred in admitting hearsay

repetition of L.H.'s out-of-court statements without holding the reliability hearing required

by RCW 9A.44.120(1). We review evidence admission under RCW 9A.44.120(1) for

abuse of discretion.[2] *State v. Swann*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990). The

statute partly provides:

> A statement made by a child when under the age of ten describing any act
> of sexual contact performed with or on the child by another, . . . not
> otherwise admissible by statute or court rule, is admissible in evidence in
> . . . criminal proceedings . . . if:
>     (1) The court finds, in a hearing conducted outside the presence of the
> jury, that the time, content, and circumstances of the statement provide
> sufficient indicia of reliability . . . .

RCW 9A.44.120; *see* ER 807.

Here, the trial court did not find, in a hearing conducted outside the jury's

presence, that the times, contents, and circumstances of L.H.'s hearsay statements

---

[2] A trial court abuses its discretion if its decision is "manifestly unreasonable," based on "untenable grounds," or made for "untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) ("A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take, and arrives at a decision outside the range of acceptable choices." (citations omitted) (internal quotation marks omitted)). Additionally, a trial court abuses its discretion if it fails to exercise discretion when required to do so. *Kucera v. State*, 140 Wn.2d 200, 224, 995 P.2d 63 (2000); *Bowcutt v. Delta N. Star Corp.*, 95 Wn. App. 311, 320-21, 976 P.2d 643 (1999).

provide sufficient indicia of their reliability.[3] While conceding the court erred under RCW 9A.44.120(1), the State argues Mr. Volk waived his error claim by failing to object on this ground or request this hearing before the court admitted the statements at trial. We agree with the State. We will not consider the necessity of an RCW 9A.44.120(1) reliability hearing for the first time on appeal. *See State v. Leavitt*, 111 Wn.2d 66, 71-72, 758 P.2d 982 (1988); RAP 2.5(a); ER 103(a)(1).

Moreover, the record shows Mr. Volk stipulated to the reliability of L.H.'s hearsay statements. In the first trial, Mr. Volk agreed "all the statements the child made to others alleging this act would be admitted on condition that the child testify,"[4] which depended solely on whether the trial court ruled L.H. was competent to testify. RP (Jan. 6, 2012) at 6. In the second trial, Mr. Volk generally upheld this agreement by reciting it to the court and disputing competency without disputing reliability. And, both before and after the court ruled L.H. was competent to testify, Mr. Volk said he wanted the jury to view videos of L.H.'s forensic interviews with Detective Sergeant Koss and Ms. Larrabee. Thus, Mr. Volk may not challenge the court's failure to hold an RCW 9A.44.120(1) reliability hearing because he invited the error. *See State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (stating the invited error doctrine "'prohibits a

---

[3] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless an exception applies. ER 802. The parties do not dispute that L.H.'s out-of-court statements would ordinarily constitute inadmissible hearsay.

[4] While the transcript and the State attribute this statement to defense counsel, Mr. Volk attributes it to the prosecuting attorney. Either attribution is reasonable because the context is ambiguous. But we must analyze the transcript provided without speculating on whether it contains an error in attribution.

party from setting up an error at trial and then complaining of it on appeal.'" (quoting

*State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by*

*State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995))); *State v. Momah*, 167 Wn.2d

140, 154, 217 P.3d 321 (2009) (stating a party may invite error by affirmatively

assenting or materially contributing to it).[5]

### B. Ineffective Assistance of Counsel

The issue is whether Mr. Volk received ineffective assistance of counsel. He

contends his trial attorney performed deficiently and prejudiced his defense by waiving

an RCW 9A.44.120(1) reliability hearing and failing to object to L.H.'s hearsay

statements as unreliable.

The Sixth Amendment guarantees a criminal defendant the right to effective

assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 & n.14, 90 S. Ct.

1441, 25 L. Ed. 2d 763 (1970); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L.

Ed. 2d 1 (2003). To prove counsel was ineffective, the defendant must show "counsel's

performance was deficient" and "the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Failure to show either element defeats the claim. *Id.* at 697.

Deficient performance occurs if "counsel's representation fell below an objective

standard of reasonableness." *Id.* at 688. This standard requires "reasonableness under

---

[5] As part of this same error claim, Mr. Volk additionally argues L.H.'s hearsay statements were needlessly cumulative and the trial court erred by failing to perform an ER 403 balancing analysis. But he waived his argument by failing to object on this ground or request this analysis before the court admitted the statements at trial. *See* RAP 2.5(a); ER 103(a)(1).

prevailing professional norms" and "in light of all the circumstances." *Id.* at 688, 690. The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To do so, the defendant must show counsel's performance cannot be explained as a sound defense strategy. *Id.*

Prejudice occurs if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability of a different result exists where counsel's deficient performance "undermine[s] confidence in the outcome." *Id.* The defendant "need not show that counsel's deficient conduct more likely than not altered the outcome." *Id.* at 693. Instead, the defendant "has . . . the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. This standard requires evaluating the totality of the record. *Id.* at 695.

The State suggests Mr. Volk cannot prove prejudice because the record shows L.H.'s hearsay statements were reliable. Where the reliability of child hearsay statements is apparent from the record, counsel's waiver of an RCW 9A.44.120(1) reliability hearing and failure to object to the statements as unreliable does not prejudice the defense. *See Leavitt*, 111 Wn.2d at 73-75; *see also State v. Stevens*, 58 Wn. App. 478, 487, 794 P.2d 38 (1990). Nine factors assist in evaluating the reliability of child hearsay statements:

> (1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; . . . (5) the timing of

10

the declaration and the relationship between the declarant and the witness[;] . . . ([6]) the statement contains no express assertion about past fact[;] ([7]) cross-examination could not show the declarant's lack of knowledge[;] ([8]) the possibility of the declarant's faulty recollection is remote[;] and ([9]) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984) (internal quotation marks omitted) (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)) (citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970).

Here, the record amply demonstrates the times, contents, and circumstances of L.H.'s hearsay statements provide sufficient indicia of their reliability. L.H. made statements to his mother, the alleged perpetrator, a registered nurse and sexual assault nursing examiner, and a sheriff's detective just one day after the alleged crime date; to a police detective sergeant three days after the alleged crime date; and to a child sexual assault forensic interviewer 10 days after the alleged crime date. More than one person heard each statement, except those L.H. made to Ms. Hamblin exclusively.

In each statement, L.H. demonstrated no apparent motive to lie. L.H.'s statements to Ms. Hamblin and Ms. Day sought their comfort and care while his statement to Mr. Volk sought his explanation or apology. L.H. spontaneously volunteered his statements to Ms. Hamblin, Mr. Volk, and Detective Higashiyama. L.H.'s statements to Detective Sergeant Koss and Ms. Larrabee simply answered their open-ended forensic interview questions. While up to four adults were present in these interviews, and while L.H. received incentives and praise for sitting still, listening, and

11

telling the truth in these interviews, nothing indicates these circumstances motivated him to tell a lie or distorted his understanding of the truth.

During each statement, L.H.'s general character ranged from clear and coherent to confused or coy, distracted or fatigued, and distraught and crying. Every statement contained express assertions of past facts. Regarding the rape's central details, L.H. showed no lack of knowledge and no more than a remote possibility of faulty recollection. While he contradicted himself regarding the rape's extraneous details and equivocated on whether he was telling the truth or a lie, L.H. consistently stated Mr. Volk anally penetrated him with cream, macaroni, and his penis. Overall, no reason exists to suppose L.H. misrepresented the fundamental nature of what Mr. Volk did.

Because the record shows L.H.'s hearsay statements were reliable, counsel's performance in waiving the reliability hearing and failing to object to the statements as unreliable does not undermine confidence in the trial outcome. It is not reasonably probable that, but for counsel's performance, the trial result would have been different. Therefore, Mr. Volk cannot prove prejudice. Given all, we conclude Mr. Volk did not receive ineffective assistance of counsel.[6]

---

[6] As part of this same error claim, Mr. Volk additionally argues his trial attorney performed deficiently and prejudiced his defense by waiving the ER 403 balancing analysis and failing to object to L.H.'s out-of-court statements as needlessly cumulative. But Mr. Volk cannot prove prejudice because admitting all statements does not undermine confidence in the trial outcome, and excluding some statements while admitting the rest does not create a reasonable probability of a different trial result. *See Strickland*, 466 U.S. at 687.

12

## C. Evidence Sufficiency

The issue is whether sufficient evidence supports Mr. Volk's first degree child rape conviction. He contends insufficient evidence exists to find him guilty because no physical evidence linked him to the rape of L.H.

For a jury to find a defendant guilty of a crime, the State must prove all essential elements of the crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (construing U.S. CONST. amend. XIV, § 1). Evidence is sufficient to prove guilt if, after viewing the evidence in the light most favorable to the State, any rational jury could find all essential elements beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency challenge admits the truth of the State's evidence and any inferences the jury may reasonably draw from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of witness credibility and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

A person commits first degree child rape if "the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."[7] RCW 9A.44.073(1).

---

[7] Sexual intercourse "has its ordinary meaning and occurs upon any penetration, however slight." RCW 9A.44.010(1)(a). Sexual intercourse "[a]lso means any penetration of the . . . anus however slight, by an object, when committed on one

Mr. Volk complains investigators never conducted a serology test to determine whether he could have possibly contributed the semen found in L.H.'s underwear, even though Mr. Volk produces sperm and this semen sample contained no sperm. Mr. Volk notes investigators never found the objects he allegedly inserted into L.H.'s anus. Mr. Volk's arguments ignore L.H.'s trial testimony and hearsay statements. According to this evidence, Mr. Volk anally penetrated L.H. with cream, macaroni, and his penis. Sufficient evidence exists to find Mr. Volk guilty of first degree child rape because, viewing the evidence in the light most favorable to the State, any rational jury could find all essential elements beyond a reasonable doubt.

### D. Exceptional Sentence

The issue is whether the sentencing court erred by imposing an exceptional sentence. Mr. Volk challenges the court's factual and legal bases for his sentence, as well as the length of his sentence. In reviewing an exceptional sentence, we traditionally conduct a three-pronged analysis set forth in RCW 9.94A.585(4). *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237 (1987) (citing *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986); *State v. Oxborrow*, 106 Wn.2d 525, 532, 723 P.2d 1123 (1986)). We address the factual support, legal justification, and excessiveness prongs in turn.

First, in the past we have determined under a clearly erroneous standard whether the record before a sentencing court factually supports its reasons for imposing

---

person by another, whether such persons are of the same or opposite sex, . . ." and "[a]lso means any act of sexual contact between persons involving the sex organs of

an exceptional sentence.[8] RCW 9.94A.585(4); *Dunaway*, 109 Wn.2d at 218 (citing

*Nordby*, 106 Wn.2d at 517-18). But after *Blakely v. Washington*, 542 U.S. 296, 124 S.

Ct. 2531, 159 L. Ed. 2d 403 (2004), and Laws of 2005, ch. 68, § 4 (codified as RCW

9.94A.537), a sentencing court's sole reason for imposing an exceptional sentence

must be that the *jury* found an aggravating circumstance by special interrogatory. *See*

*State v. Stubbs*, 170 Wn.2d 117, 123 & n.5, 240 P.3d 143 (2010); *State v. Suleiman*,

158 Wn.2d 280, 290-91, 143 P.3d 795 (2006). We review the jury's special

interrogatory under an evidence sufficiency standard. *See Stubbs*, 170 Wn.2d at 123;

*State v. Yates*, 161 Wn.2d 714, 752, 168 P.3d 359 (2007).

Mr. Volk argues the record does not support the jury's special interrogatory.

Specifically, he argues insufficient evidence exists to find an aggravating circumstance

based on L.H.'s particular vulnerability. For a jury to find an aggravating circumstance,

the State must prove all facts supporting the aggravating circumstance beyond a

reasonable doubt. RCW 9.94A.537(3) (implementing *Blakely*, 542 U.S. 296). Evidence

is sufficient to prove the aggravating circumstance if, after viewing the evidence in the

light most favorable to the State, any rational jury could find all supporting facts beyond

a reasonable doubt. *Stubbs*, 170 Wn.2d at 123; *Yates*, 161 Wn.2d at 752. An evidence

---

one person and the . . . anus of another whether such persons are of the same or opposite sex." RCW 9A.44.010(1)(b)-(c).

[8] The sentencing court's reasons for imposing an exceptional sentence are clearly erroneous if "upon review of the entire record, [this court] is left with a definite and firm conviction that a mistake has been committed." *State v. Handley*, 54 Wn. App. 377, 380, 773 P.2d 879 (1989), *aff'd*, 115 Wn.2d 275 (1990); *see Ancheta v. Daly*, 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969) (applying the clearly erroneous standard set forth in *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525 92 L. Ed. 746 (1948)).

sufficiency challenge admits the truth of the State's evidence and any inferences the jury may reasonably draw from it. *Salinas*, 119 Wn.2d at 201. We defer to the jury's assessment of witness credibility and evidence weight. *Carver*, 113 Wn.2d at 604.

An aggravating circumstance exists if, when the defendant committed the crime, "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." RCW 9.94A.535(3)(b). The victim must have had a particular vulnerability that the defendant knew or should have known about and that served as a substantial factor in committing the crime. *Suleiman*, 158 Wn.2d at 291-92 (citing *State v. Gore*, 143 Wn.2d 288, 318, 21 P.3d 262 (2001), *overruled on other grounds by State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005)). A particular vulnerability is something rendering the victim more vulnerable to the crime than other potential victims of the same crime. *See State v. Jones*, 59 Wn. App. 744, 753, 801 P.2d 263 (1990) (citing *State v. Jackmon*, 55 Wn. App. 562, 567, 778 P.2d 1079 (1989)).

Here, L.H. was four and one-half years old when Mr. Volk raped him; such extreme youth was a particular vulnerability because it rendered L.H. more vulnerable to first degree child rape than older children still under age 12. *See State v. Bedker*, 74 Wn. App. 87, 94, 871 P.2d 673 (1994); *State v. Garibay*, 67 Wn. App. 773, 777-79, 841 P.2d 49 (1992); *see also State v. Fisher*, 108 Wn.2d 419, 424, 739 P.2d 683 (1987). Mr. Volk does not dispute he knew or should have known about L.H.'s extreme youth, and L.H.'s extreme youth served as a substantial factor in committing the crime. Sufficient evidence exists to find an aggravating circumstance based on L.H.'s particular

16

vulnerability because, viewing the evidence in the light most favorable to the State, any rational jury could find all supporting facts beyond a reasonable doubt.

Mr. Volk next argues the record does not support the sentencing court's reasons for imposing an exceptional sentence because the court did not enter written factual findings and legal conclusions. Ordinarily, the sentencing court must state its reasons for imposing an exceptional sentence in written findings and conclusions. RCW 9.94A.535. Where the sentencing court fails to do so, we usually remand. *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 311, 979 P.2d 417 (1999). But where the record is sufficiently comprehensive and clear for this court to discern the sentencing court's reasons for imposing an exceptional sentence, written findings and conclusions are a mere formality and remand is unnecessary. *See State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011).

Here, the judgment and sentence says,

> **2.4 [X] Exceptional Sentence.** The court finds substantial and compelling reasons that justify an exceptional sentence:
> . . . .
> [X] above the standard range for Count(s) ___one___.
> . . . .
> > [X] Aggravating factors were . . . [X] found by jury, by special interrogatory.
> . . . .
> Findings of fact and conclusions of law are attached . . . . [X] Jury's special interrogatory is attached.

CP at 185. While the sentencing court never attached written findings and conclusions, it attached the jury's special interrogatory. And, the court orally specified it considered "the aggravating factors found by the jury that the child was – because of the particular

17

vulnerability of the child which . . . assisted in the commission of this particular offense." RP at 737. Considering all, we conclude the record is sufficiently comprehensive and clear for us to discern the sentencing court imposed an exceptional sentence solely because the jury found an aggravating circumstance by special interrogatory. Therefore, written findings and conclusions are a mere formality and remand is unnecessary.

In sum, the jury's special interrogatory satisfies an evidence sufficiency standard and, thus, under a clearly erroneous standard, the record before the sentencing court factually supports its reason for imposing an exceptional sentence.

Second, we decide de novo whether a sentencing court's reasons for imposing an exceptional sentence legally justify doing so. RCW 9.94A.585(4); *Dunaway*, 109 Wn.2d at 218 (citing *Nordby*, 106 Wn.2d at 517-18). Those reasons must be "substantial and compelling," considering the purposes of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. RCW 9.94A.535, .537(6). The reasons must account for factors other than those our legislature necessarily considered in establishing the crime's standard range. *Nordby*, 106 Wn.2d at 518. Thus, inherent factors and essential elements of the crime cannot justify imposing an exceptional sentence. *State v. Chadderton*, 119 Wn.2d 390, 396, 832 P.2d 481 (1992); *State v. Ferguson*, 142 Wn.2d 631, 648, 15 P.3d 1271 (2001).

Mr. Volk argues L.H.'s young age cannot justify imposing an exceptional sentence because it is an inherent factor or essential element of first degree child rape as defined in RCW 9A.44.073(1). His argument is untenable. Extreme youth justifies

18

imposing an exceptional sentence for first degree child rape because, although RCW 9A.44.073(1) contemplates some vulnerability in requiring victims to be under age 12, our legislature did not necessarily consider the extreme youth of specific victims in establishing the crime's standard range. *See Chadderton*, 119 Wn.2d at 395-96; *Fisher*, 108 Wn.2d at 424; 13B SETH A. FINE & DOUGLAS J ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3803, at 373-74 (2d ed. 1998). Additionally, extreme youth is a substantial and compelling reason for imposing an exceptional sentence, considering the SRA's purposes of ensuring proportional and just punishment protecting the public. *See* RCW 9.94A.010(1)-(2), (4).

In sum, the sentencing court's reason for imposing an exceptional sentence legally justifies doing so.

Third, we determine under an abuse of discretion standard whether the exceptional sentence imposed is clearly excessive. RCW 9.94A.585(4); *Dunaway*, 109 Wn.2d at 218 (citing *Oxborrow*, 106 Wn.2d at 532).

Without citing legal authority, Mr. Volk argues the sentencing court abused its discretion by considering L.H.'s young age twice: first, in selecting a standard range, and second, in selecting an exceptional sentence. We reject his argument because he fails to substantiate it. *See Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990) (stating an appellate court should not address an issue a party fails to support with "adequate, cogent argument and briefing)" (citing *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989))).

E. Community Custody Conditions

The issue is whether the sentencing court erred in imposing community custody conditions relating to pornography and alcohol. Mr. Volk may challenge his sentence as illegal or erroneous for the first time on appeal. *See State v. Ford*, 137 Wn.2d 472, 477, 484, 973 P.2d 452 (1999). We review a community custody condition for abuse of discretion, reversing the condition if it is manifestly unreasonable. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-93, 239 P.3d 1059 (2010) (citing *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)). A condition is manifestly unreasonable if, in imposing it, the sentencing court adopted a view no reasonable person would take. *See State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993) (citing *State v. Blight*, 89 Wn.2d 38, 41, 569 P.2d 1129 (1977)).

First, Mr. Volk contends the community custody condition prohibiting him from using, purchasing, or possessing pornographic material is unconstitutionally vague. A condition is manifestly unreasonable if it is unconstitutionally vague. *Bahl*, 164 Wn.2d at 753. Unconstitutional vagueness appears where a condition does not give the offender fair warning because it either lacks sufficient definiteness for ordinary people to understand the prohibited conduct or lacks ascertainable standards for enforcement personnel to properly identify violations without acting arbitrarily. *Id.* at 752-54.

The community custody condition prohibiting Mr. Volk from purchasing, possessing, or using pornographic material is unconstitutionally vague, despite leaving the task of defining pornographic material to the treatment provider, community corrections officer, and sentencing court. *See id.* at 758. Therefore, the condition is

20

manifestly unreasonable. We remand for the sentencing court to narrowly tailor this condition by, for example, revising it to prohibit Mr. Volk from purchasing, possessing, or using any depiction of "sexually explicit conduct" as defined in RCW 9.68A.011(4).

Second, Mr. Volk contends the community custody conditions prohibiting him from consuming, purchasing, or possessing alcohol, and entering or remaining in establishments where alcohol is the main revenue source, exceed statutory authority because they are not crime related. A condition is illegal or erroneous if it exceeds statutory authority. *See State v. Furman*, 122 Wn.2d 440, 456, 858 P.2d 1092 (1993) (quoting *State v. Theroff*, 33 Wn. App. 741, 744, 657 P.2d 800 (1983)); *State v. Barnett*, 139 Wn.2d 462, 464, 987 P.2d 626 (1999) (citing *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980)). The sentencing court may, as a condition of community custody, require the offender to "[r]efrain from consuming alcohol" and "[c]omply with any crime-related prohibitions." RCW 9.94A.703(3)(e)-(f). A crime-related prohibition is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

The community custody condition prohibiting Mr. Volk from consuming alcohol is statutorily authorized, regardless of whether alcohol was crime related. *See* RCW 9.94A.703(3)(e); *State v. Jones*, 118 Wn. App. 199, 206-07, 76 P.3d 258 (2003). Therefore, the condition is not illegal or erroneous and the sentencing court did not err in imposing it. But the remaining conditions exceed statutory authority. Because no evidence suggests alcohol was directly related to the circumstances of this first degree

21

child rape, the conditions prohibiting Mr. Volk from purchasing or possessing alcohol, and entering or remaining in establishments where alcohol is the main revenue source, are not crime related. *See* RCW 9.94A.030(10), .703(3)(f); *Jones*, 118 Wn. App. at 207-08. Therefore, the conditions are illegal or erroneous. We remand for the sentencing court to strike these conditions.

## F. SAG

First, Mr. Volk challenges the sufficiency of the physical evidence, identifying its various limitations. We reject his challenge to the extent it repeats matters adequately addressed by his appellate attorney's brief and rejected above. *See* RAP 10.10(a) (providing the purpose of a SAG is to "identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by the defendant/appellant's counsel"). Additionally, we reject the remainder of his pro se challenge because it is unpersuasive. What he perceives as weaknesses in the physical evidence were matters for the jury to decide in assessing witness credibility and evidence weight. We must defer to the jury's assessment by viewing the evidence in the light most favorable to the State and accepting as true any conclusions or inferences the jury could reasonably draw from the evidence. *See Green*, 94 Wn.2d at 221 (quoting *Jackson*, 443 U.S. at 319); *Salinas*, 119 Wn.2d at 201; *Carver*, 113 Wn.2d at 604. In sum, sufficient evidence exists to find Mr. Volk guilty of first degree child rape.

Second, Mr. Volk personally challenges his trial attorney's effectiveness, arguing counsel did not adequately investigate the State's case or prepare a defense to it. We

22

reject his challenge to the extent it relies on matters outside our record, including the investigation and preparation tasks counsel allegedly failed to complete, his reasons for failing to complete them, his mental impressions regarding the State's case, and the extent to which his involvement in the first trial impacted his defense strategy in the second trial. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (stating an appellate court may not consider matters outside the record when reviewing an ineffective assistance of counsel claim on direct appeal). Additionally, we reject the remainder of Mr. Volk's challenge because his personal dissatisfaction with his trial attorney does not prove counsel performed deficiently or prejudiced the defense. *See Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983); *Strickland*, 466 U.S. at 687. In sum, Mr. Volk did not receive ineffective assistance of counsel.

Third, Mr. Volk challenges L.H.'s competence to testify, arguing the State did not show he knew the difference between the truth and a lie. We disagree with Mr. Volk. When, on direct examination, the State asked L.H. a question about a hypothetical situation, he correctly distinguished the truth from a lie. But he incorrectly explained the subject of the hypothetical situation told a lie "[b]ecause he wants to get in trouble." RP at 14. Immediately thereafter, L.H. clarified, "It's bad to tell a lie . . . . Because you get in trouble." *Id.* When the State asked him, "Will you tell the truth here today?" L.H. answered, "Yes." RP at 15. Then, the State elicited the following testimony from L.H.:

> Q. [L.H.], why are you here today?
> A. Because I am here to tell the truth.
>  . . . .

23

> . . . I came here to – to tell the truth.
> Q. Tell the truth about what, [L.H.]?
> A. About Cas.
> Q. What about Cas, [L.H.]?
> A. He put – about Cas hurt me.
> Q. [L.H.], how did Cas hurt you?
> A. He put his pee pee in my butt and macaroni in my butt.
> . . . .
> . . . And cream.

RP at 16. When requested, L.H. identified the location of his penis and anus and explained what he uses them for. Mr. Volk briefly cross-examined L.H.

Mr. Volk cannot rebut the presumption of competence. *See State v. S.J.W.*, 170 Wn.2d 92, 100, 102, 239 P.3d 568 (2010); ER 601. The trial court ruled L.H. was competent to testify, reasoning, "[H]e understands the obligation to tell the truth, particularly, in this setting. And he has a memory and has an ability to describe the events that's [sic] at issue in this particular case." RP at 19-20; *see* RP at 22. Therefore, the court did not abuse its discretion and did not err in ruling L.H. was competent to testify. *See State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967); RCW 5.60.050(2); CrR 6.12(c).

Finally, Mr. Volk challenges the reliability and evidentiary sufficiency of L.H.'s forensic interview statements, arguing Detective Sergeant Koss and Ms. Larrabee were biased and ignored applicable guidelines, asked leading questions, elicited contradictory answers, and generally coerced and bribed L.H. to implicate Mr. Volk. We reject Mr. Volk's challenge to the extent it repeats matters adequately addressed by his appellate attorney's brief and rejected above. *See* RAP 10.10(a). Additionally, we reject the remainder of his pro se challenge because it is unpersuasive. The jury

24

viewed videos of the forensic interviews. These videos show Detective Sergeant Koss and Ms. Larrabee did not engage in misconduct. What Mr. Volk identifies as flaws in the conduct of the interviews were matters for the jury to decide in assessing witness credibility and evidence weight. In sum, the statements are reliable and sufficient evidence exists.

## CONCLUSION

We affirm Mr. Volk's conviction and exceptional sentence. We reverse the community custody conditions except for that condition prohibiting Mr. Volk from consuming alcohol. We remand for the sentencing court to correct Mr. Volk's judgment and sentence by, first, narrowly tailoring the condition prohibiting him from purchasing, possessing, or using pornographic material; and second, striking the conditions prohibiting him from purchasing or possessing alcohol, and entering or remaining in establishments where alcohol is the main revenue source.

Affirmed in part, reversed in part, and remanded with instructions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Kulik, J.P.T.

Fearing, J.

25